Noam Glick[1]
Glick Law Group, PC
225 Broadway, Suite 1900
San Diego, California 92101
(619) 382-3400
noam@glicklawgroup.com

Benjamin Rudolph Delson
Alexander Granovsky
Granovsky & Sundaresh PLLC
48 Wall Street, 11th Floor
New York, New York 10005
(646) 524-6001
delson@g-s-law.com
ag@g-s-law.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANDRE CANTEY, JAMES BATTLE, and TERRENCE BOSTON, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br>vs.<br><br>CENTER FOR EMPLOYMENT OPPORTUNITIES, INC.,<br><br>*Defendant.* | Case No.:<br><br>**FLSA COLLECTIVE ACTION AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs ANDRE CANTEY ("Cantey"), JAMES BATTLE, ("Battle"), and TERRENCE BOSTON ("Boston") (together "Plaintiffs"), on behalf of themselves and all others similarly situated, for their FLSA collective action and class action complaint against Defendant CENTER FOR EMPLOYMENT OPPORTUNITIES, INC., a New York corporation ("Defendant" or "CEO"), upon information and belief, except as to the allegations that pertain to Plaintiffs and that are alleged upon personal knowledge, allege as follows:

---

[1] Application for admission *pro hac vice* forthcoming

**INTRODUCTION**

1.      CEO is an employment services organization that provides short-term paid transitional employment to those with criminal convictions. The organization has over 30 locations across the United States, with five New York State locations spanning from Albany to Rochester to multiple locations in New York City.

2.      In New York State, CEO employs thousands of non-exempt, hourly employees (who it calls "Participants") to perform various entry level jobs such as litter abatement, landscaping, and maintenance projects. Each employee works in this role for a period typically ranging from 12 to 24 weeks. Thereafter, the employee leaves the CEO program to find another job elsewhere.

3.      CEO systematically underpays these employees, including Plaintiffs, by refusing to pay them for all hours worked. For example, CEO requires all Participants to attend mandatory weekly "job coaching" meetings lasting one hour (or more) on their non-work days, but pays them nothing for that time.

4.      As a result of CEO's unlawful procedures, it systematically underpays employees an hour or more of regular wages each week. And, under New York's "call-in pay" law, each employee is entitled to four hours of pay for each day they are required to attend the mandatory one-hour meeting.

5.      Furthermore, Plaintiffs and class members did not record their own time. Plaintiffs' supervisors logged Plaintiffs into work, often inaccurately, resulting in underpayment of owed wages.

6.      In addition, Defendant implemented an unlawful time-rounding policy and practice which rounded down and reduced the actual working hours recorded by Plaintiffs and Class Members, to the detriment of the Plaintiffs and Class Members.

7. CEO's unlawful policy of requiring off-the-clock work also results in incorrect wage statements which fail to accurately reflect all hours worked and compensation due, among other things.

8. CEO's employment practices are illegal and unfair to its employees. On behalf of themselves and the putative collective action members and the class defined below, Plaintiffs bring this action for violations of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), and New York Labor Law ("NYLL").

## JURISDICTION AND VENUE

9. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FLSA.  This Court has supplemental jurisdiction over the New York state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this District because Defendant conducts business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

11. Plaintiff Andre Cantey is, and at all times mentioned was, an individual residing in Albany County, New York.  He was employed by and worked for CEO as a nonexempt transitional employee in Albany County, New York.  Defendant employed Cantey from approximately April 2021 through August 2021.

12. Plaintiff James Battle is, and at all times mentioned was, an individual residing in the Kings County, New York. He was employed by and worked for Defendant as a nonexempt transitional employee in Kings County, New York. Defendant employed Battle from approximately August 2023 through January 2024.

13.     Plaintiff Terrence Boston is, and at all times mentioned was, an individual residing in Albany County, New York. He was employed by and worked for Defendant as a nonexempt transitional employee in Albany County, New York. Defendant employed Boston from approximately August 2023 through January 2024.

14.     Plaintiffs are informed and believe CEO is, and at all times mentioned was, an active 501(c)(3) organization organized and existing under and by virtue of the laws of the State of New York. CEO is headquartered in Manhattan and does business throughout New York State. Defendant employed Plaintiffs and Class Members during the Class Period or is otherwise liable for the causes of action set forth herein.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiffs bring their claims under FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by Defendant in New York State on or after the date that is three years before the filing of the Complaint in this case ("FLSA Collective Plaintiffs").

16.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them proper overtime pay. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17.     Plaintiffs' claims under the FLSA are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be

provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

18. Written consent forms for the Named Plaintiffs to serve as party plaintiffs in this action are attached as Exhibits A, B and C to this Complaint.

## CLASS ACTION ALLEGATIONS

19. Pursuant to the Federal Rules of Civil Procedure, Rule 23, Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated Class Members, defined below. This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of class actions.

20. **Class Definition:** The Class is defined as follows: All current and former non-exempt transitional employees (known at CEO as "Participants") employed by CEO in New York State (the "Class" or the "Class Members").

21. Plaintiffs are members of this Class.

22. The class period extends, at a minimum, six years prior to the filing of this Complaint, as extended by any applicable tolling principles or the like (the "Class Period").

23. Excluded from the Class are: (1) Defendant, entities in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and any member of the judge's immediate family.

24. Plaintiffs reserve the right to amend or modify the Class Definition. This includes, but is not limited to, providing greater specificity or dividing into subclasses.

25. **Numerosity:** The potential Class Members are so numerous that joinder of all members is impracticable. Plaintiffs do not yet know the identity of all Class Members but is informed and believes and thereon alleges the Class is comprised of at least 1,000 individuals who worked as

nonexempt transitional employees in New York State for Defendant during the last six years. Records maintained and, in the possession, and control of Defendant or otherwise readily obtainable from third parties will easily identify Class Members.

26. **Ascertainability:** The Class is comprised of an easily ascertainable set of persons who work or worked for Defendant as Participants in New York State. Class Members can easily recognize whether they belong in the class by reading the class definition above. And all the names and contact information for all class members can easily be determined from the employment records that Defendant maintains in the regular course of business.

27. **Community of Interest:** There is a well-defined interest among Class Members, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court.

28. **Typicality:** Plaintiff's claims are typical of the Class. Like all Class Members, Plaintiffs suffered the alleged violations of New York law and resulting damages.

29. **Commonality:** Defendant's misconduct is common to all Class Members. Defendant required uncompensated labor from all Class Members, failed to pay them for all hours worked, and failed to provide overtime premium pay, among other things. This resulted in damages.

30. **Common Questions of Law and Fact:** The numerous questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members. These include, but are not limited to:

> a. Whether Defendant employed Plaintiffs and the Class Members within the meaning of New York law;

  b. Whether Defendant had a policy or practice of failing to pay Plaintiffs and the Class Members wages for "job coaching" sessions, and whether that policy or practice violated New York law;

  c. Whether Defendant had a policy or practice of failing to pay Plaintiffs and the Class Members required "call-in" pay, and whether that policy or practice violated New York law;

  d. Whether Defendant had a policy or practice of failing to pay Plaintiffs and the Class Members required overtime pay, and whether that policy or practice violated New York law or federal law;

  e. Whether Defendant maintained a policy or practice of failing to provide adequate wage statements, and whether that policy or practice violated New York law;

  f. Whether the Class is entitled to equitable relief and to what extent; and

  g. Whether compensatory and other types of damages should be awarded.

31. **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class. Their counsel is experienced in prosecuting class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

32. **Superiority of Class Action:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Based on the relatively small size of the individual Class claims, absent a class action, most would likely find the cost of litigating their claims against Defendant to be prohibitive. The class treatment of common questions of law and

fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. The consideration of common questions of fact and law will conserve judicial resources and promote a fair and consistent resolution of these labor violations.

## **GENERAL ALLEGATIONS**

33.     CEO employs thousands of nonexempt workers in New York State to perform various jobs such as litter abatement, landscaping, and maintenance projects. Each employee works as a transitional employee, or "Participant," for a period typically ranging from 12 to 24 weeks. Thereafter, the employee leaves the CEO program to find other jobs.

34.     CEO imposes a uniform, mandatory weekly "job coaching" requirement on all Participants in New York. Each Participant is required to travel on their would-be days off to attend a meeting on CEO property for job coaching.  The meetings last one hour or more. Participation in the weekly job coaching meetings directly benefits CEO by developing a better, more efficient, and more professional workforce. The attendance requirement is strict and the consequences for non-attendance severe: an employee who misses the required weekly meeting forfeits the opportunity to work paid shifts the following week. In this way, CEO exercises complete control over its employees through its mandatory attendance requirement. Despite the mandatory nature of the weekly meetings, CEO did not compensate Participants for the meetings.

35.     Furthermore, CEO employed Plaintiffs and other non-exempt employees did not record their own time. Instead, Plaintiffs' supervisors themselves logged employees into work based on employees' *scheduled* work hours, rather than the hours they were actually under Defendant's control. On occasions when Plaintiffs worked over eight hours in a workday and/or forty hours in

a workweek, Defendant's timekeeping policies/practices deprived them of additional overtime wages earned.

36. Furthermore, Defendant implemented an unlawful time-rounding policy and practice which rounded down and reduced the actual working hours recorded by Plaintiffs and Class Members, and upon which their pay was based, and generally did so to the detriment of the Plaintiffs and Class Members. This policy is not neutral and results, over time, to the detriment of the Plaintiffs and Class Members by systematically undercompensating them.

37. As a result of CEO's unlawful procedures, it systematically underpays employees an hour or more of regular wages each week. And under New York State's "call-in pay" law, 12 NYCRR §§ 142-3.3, each employee was entitled to four hours of pay for each day they were required to attend the mandatory one-hour meeting. CEO's unlawful policy of requiring off-the-clock work also results in incorrect wage statements which fail to accurately reflect all hours worked and compensation due, among other things.

**FIRST CAUSE OF ACTION**
**By Plaintiffs, Individually and On Behalf of The FLSA Collective Plaintiffs,**
**For Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. §201, *et seq.***

38. Plaintiffs incorporate by reference each and every allegation contained above.

39. Plaintiffs bring this claim on behalf of themselves and the FLSA Collective Plaintiffs.

40. Throughout the statute of limitations period covered by these claims, Plaintiffs and the other FLSA Collective Plaintiffs were employees of Defendant.

41. Throughout the statute of limitations period covered by these claims, Plaintiffs and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek for Defendant.

42.     At all relevant times, Defendant maintained a policy and procedure of willfully failing and refusing to pay Plaintiffs and the FLSA Collective Plaintiffs the appropriate overtime rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though the Plaintiffs and the FLSA Collective Plaintiffs were and are entitled to overtime.

43.     At all relevant times, Defendant willfully, regularly and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at the required overtime rates for hours worked in excess of forty (40) hours per workweek.

44.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
**By Plaintiffs, Individually and On Behalf of The Class Members,  
For Failure to Pay all Wages Due in Violation of NYLL §§ 650 *et seq*.**

45.     Plaintiffs incorporate by reference each and every allegation contained above.

46.     Plaintiffs bring this claim individually and on behalf of Class Members.

47.     Throughout the statute of limitations period covered by these claims, Plaintiffs and the Class Members were employees of Defendant.

48.     Defendant did not pay Plaintiffs and the Class Members either their agreed wages, nor the New York State minimum wage, for all hours worked, including because Defendant maintained policies of (i) requiring Plaintiffs and the Class Members the attend unpaid weekly "job coaching" sessions, (ii) not paying Plaintiffs and the Class Members for the "call in" hours required by 12 NYCRR §§ 142-3.3 when they were compelled to attend "job coaching" sessions,

10

and (iii) paying Plaintiffs and the Class Members based on scheduled hours, not on hours worked, and (iv) rounding down Plaintiffs' and the Class Members' hours.

49. Defendant's failure to pay Plaintiffs and the Class Members either their agreed wages or the New York State minimum wage for all hours worked was willful.

50. As a result of Defendant's willful and unlawful conduct, Plaintiffs and Class Members are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

### THIRD CAUSE OF ACTION
**By Plaintiffs, Individually and On Behalf of The Class Members, For Failure to Pay all Overtime Wages Due in Violation of NYLL § 650 et seq. & 12 NYCRR § 146-1.4**

51. Plaintiffs incorporate by reference each and every allegation contained above.

52. Plaintiffs bring this claim individually and on behalf of Class Members.

53. Throughout the statute of limitations period covered by these claims, Plaintiffs and the Class Members were employees of Defendant.

54. Defendant did not pay Plaintiffs and the Class Members overtime premium wages equal to 150% their standard wages when Plaintiffs and the Class Members worked in excess of forty hours in a workweek.

55. Defendant's failure to pay Plaintiffs and the Class Members overtime premium wages was willful.

56. As a result of Defendant's willful and unlawful conduct, Plaintiffs and Class Members are entitled to an award of damages, including liquidated damages, in amount to be determined at

trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## FOURTH CAUSE OF ACTION
**By Plaintiffs, Individually and On Behalf of The Class Members,
For Failure to Provide Accurate Wage Notices in Violation of NYLL §§ 195 & 198.**

57. Plaintiffs incorporate by reference each and every allegation contained above.

58. Plaintiffs bring this claim individually and on behalf of Class Members.

59. Defendant did not provide Plaintiffs and the Class Members with accurate wage statements required by N.Y. Lab. Law § 195. For example, the paystubs that Defendant issued to Plaintiffs and Class Members did not include accurate information on all hours worked nor on all overtime hours worked.

60. Plaintiffs and the Class Members suffered actual injuries as a result of Defendant's failure to provide accurate wage statements. For example, because Defendant did not include the hours Plaintiffs and the Class Members spent attending "job coaching" sessions in its wage statements and did not include "call in" hours required by 12 NYCRR §§ 142-3.3 when Plaintiffs and the Class Members attended such sessions, Plaintiffs and the Class Members were unaware of the number of compensable hours they were working each week, and so Defendant prevented Plaintiffs and the Class Members from being able to calculate or advocate for their proper pay.

61. Had Defendant included accurate information on hours worked in its pay statements, Plaintiffs and the Class Members would have advocated for their proper pay. Thus, as a direct consequence of Defendant not providing accurate wage statements, Plaintiffs and the Class Members suffered the concrete harm of lost wages.

62. As a result of Defendant's unlawful conduct, Plaintiffs and Class Members are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law §663.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class Members, prays for relief as follows:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B. Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

C. Designation of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiffs as Representative of the Class;

E. An award of damages, according to proof, including liquidated damages, to be paid by Defendant;

F. Penalties available under applicable laws;

G. Costs of action incurred herein, including expert fees;

H. Attorneys' fees, including fees pursuant to the FLSA, NYLL and other applicable statutes;

I. Pre-Judgment and post-judgment interest, as provided by law; and

J. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of the FLSA Collective Plaintiffs and the Class, demand a jury trial on all matters so triable.

Dated:  Sacramento, California
        June 9, 2025

Respectfully Submitted,

GRANOVSKY & SUNDARESH PLLC

By: _____
Benjamin Rudolph Delson
Alexander Granovsky
48 Wall Street, 11th Floor
New York, New York 10005
(646) 524-6001
delson@g-s-law.com
ag@g-s-law.com

Noam Glick[2]
Glick Law Group, PC
225 Broadway, Suite 1900
San Diego, California 92101
(619) 382-3400
noam@glicklawgroup.com

*Attorneys for Plaintiffs*

---

[2] Application for admission *pro hac vice* forthcoming