USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/06/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                         :

ANDRE CANTEY and TERRENCE BOSTON,    :
*individually and on behalf of all others similarly situated,*  :

                              :

                       Plaintiffs,         :         25-cv-4843 (LJL)

                              :

           -v-                    :        OPINION AND ORDER

                              :

CENTER FOR EMPLOYMENT OPPORTUNITIES,  :
INC.,                              :

                              :

                    Defendant.     :

                              :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant Center for Employment Opportunities, Inc. ("Defendant" or "CEO") moves, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the amended complaint against it. Dkt. No. 22. For the reasons that follow, the motion is granted without prejudice to the filing of a second amended complaint.

## BACKGROUND

For purposes of this motion, the Court assumes the truth of the well-pleaded allegations of the amended complaint.

Defendant is an employment services organization that provides short-term paid transitional employment to those with criminal convictions. Dkt. No. 16 ¶ 1. Defendant has over 30 locations in the United States, with five locations in New York State including in New York City. *Id.* Defendant is an active 501(c)(3) organization organized and existing under the laws of New York State and is headquartered in Manhattan, New York. *Id.* ¶ 15. It employs thousands of hourly employees in New York State, whom it calls "Participants," to perform various entry-level jobs such as litter abatement, landscaping, and maintenance projects. *Id.*

¶¶ 2, 34.  Each employee typically works in this role for a period of 12 to 24 weeks before leaving the CEO program to find a job elsewhere.  *Id.*

Plaintiffs are New York residents who were employed as transitional employees by Defendant.  *Id.* ¶¶ 12–14.  Plaintiff Andre Cantey ("Cantey") was employed by and worked for Defendant as a nonexempt transitional employee in Albany County, New York from April 2021 through August 2021.  *Id.* ¶ 12.  Plaintiff Terrence Boston ("Boston") was employed by and worked for Defendant as a nonexempt transitional employee in Albany County, New York from approximately August 2023 through January 2024.  *Id.* ¶ 14.[1]

Plaintiffs allege that Defendant imposes a uniform, mandatory weekly "job coaching" requirement on all Participants in New York.  *Id.* ¶ 36.  Each Participant is required to travel on their would-be days off to attend a meeting on CEO property for job coaching.  *Id.*  The meetings last one hour or more, attendance is strictly required, and the consequences for non-attendance are severe.  *Id.*  A Participant who misses the required weekly meeting forfeits the opportunity to work paid shifts the following week.  *Id.*  Plaintiffs allege that, under New York law, they were entitled to be paid four hours of pay for each day they were required to attend the mandatory one-hour meeting.  *Id.* ¶ 4.  But, Plaintiffs allege that, even though they were required to attend the "job coaching" meetings, they were paid nothing for their time.  *Id.* ¶ 3.

Plaintiffs further allege that their supervisors recorded Plaintiffs' time, often inaccurately and based on their scheduled work hours rather than actual hours, resulting in underpayment of owed wages.  *Id.* ¶¶ 5, 37.  Plaintiffs regularly worked over 40 hours a week, but Defendant's timekeeping policies and practices deprived them of additional overtime wages earned.  *Id.* ¶ 37.

---

[1] On January 6, 2026, Plaintiff James Battle voluntarily dismissed all claims against Defendant and is no longer a plaintiff in this case.  Dkt. No. 40.

Plaintiffs further allege that Defendant implemented an unlawful time-rounding policy and practice which rounded down and reduced the actual working hours recorded by Plaintiffs. *Id.* ¶¶ 6, 38.

**PROCEDURAL HISTORY**

This case was initiated by complaint filed on June 9, 2025. Dkt. No. 1. On August 25, 2025, Plaintiffs filed an amended complaint ("AC"). Dkt. No. 16.[2] The AC asserts four causes of action: (1) the failure to pay overtime and the willful failure to keep records in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (asserted only by Plaintiff Boston), *id.* ¶¶ 40–46; (2) the failure to pay all wages due, including not paying Plaintiffs for the job coaching sessions, paying them based on scheduled hours rather than hours worked, and rounding down their hours, in violation of New York Labor Law ("NYLL") § 650 *et seq.*, *id.* ¶¶ 47–52; (3) the failure to pay overtime in violation of NYLL § 650 *et seq.* and the New York Code of Rules and Regulations, 12 N.Y.C.R.R. § 146-1.4, *id.* ¶¶ 53–58; and (4) the failure to provide accurate wage notices in violation of NYLL §§ 195 and 198, *id.* ¶¶ 59–64. Plaintiffs bring these claims as a class and collective action on behalf of all non-exempt persons employed by Defendant in New York State on or after August 25, 2022.

On September 19, 2025, Defendant filed this motion to dismiss the AC. Dkt. No. 22. Defendant also filed a memorandum of law in support of the motion and the declarations of Richard I. Greenberg and Elisa Sosa. Dkt. Nos. 23–25. On October 16, 2025, Plaintiffs filed a memorandum of law in opposition to the motion to dismiss. Dkt. No. 32. On November 7, 2025, Defendant filed a reply memorandum of law in further support of the motion to dismiss. Dkt. No. 33. The Court permitted a sur-reply by Plaintiffs, which was filed on November 14,

---

[2] Defendant moved to dismiss the complaint on August 11, 2025. Dkt. No. 13. The Court dismissed that motion as moot in light of the filing of the amended complaint. Dkt. No. 37.

3

2025, Dkt. No. 36, as well as a response to the sur-reply from Defendant, which was filed on November 21, 2025, Dkt. No. 38.

## DISCUSSION

Defendant argues that the AC should be dismissed for lack of subject matter jurisdiction and failure to state a claim for relief. Defendant argues that Plaintiff Boston fails to plead individual or enterprise coverage under FLSA or that he worked more than 40 hours in a work week so as to entitle him to overtime pay under FLSA. Dkt. No. 23 at 7–15. Defendant further argues that, if the Court dismisses Boston's FLSA claim, the Court would have only supplemental jurisdiction over Plaintiffs' state-law claims, which it should decline to exercise. *Id.* at 15–16. Finally, Defendant argues that the AC does not plead facts to establish standing for the wage-statement claims. *Id.* at 17–20.[3]

A court properly dismisses a claim for lack of subject-matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate [the claim]." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y.

---

[3] Defendant additionally argues that Plaintiff has failed to establish subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because the local controversy exception to CAFA jurisdiction applies here. Dkt. No. 23 at 21 (citing 28 U.S.C. § 1332(d)(4)(A)). Plaintiffs concede that there is no jurisdiction under CAFA due to this exception. Dkt. No. 36 at 1 n.2.

4

1996)).  Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party.  *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001).  However, where the jurisdictional challenge is fact-based, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts."  *Guadagno*, 932 F. Supp. at 95.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that

discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also*

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## I.     FLSA Claim

### A.     FLSA Coverage

The overtime provisions of FLSA apply only to employers whose employees are either

"(1) 'engaged in commerce or in the production of goods for commerce,' or (2) 'employed in an

enterprise engaged in commerce or in the production of goods for commerce.'" *Kaplan v. Wings*

*of Hope Residence, Inc.*, 2018 WL 6437069, at *5 (E.D.N.Y. Dec. 7, 2018) (quoting 29 U.S.C.

§§ 206(a), 207(a)).  "The two categories are commonly referred to as 'individual' and

'enterprise' coverage, respectively." *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir.

2009) (per curiam); *see Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8

(1985).  "Thus, in order to plead a FLSA claim, plaintiff must allege either individual coverage

or enterprise coverage." *Maldonado Juarez v. Butterfield Catering Inc.*, 2020 WL 6945944, at

*1 (S.D.N.Y. Nov. 25, 2020).  Boston proceeds on an enterprise coverage theory only.[4]

---

[4] "To establish individual coverage, the employee must perform work involving or related to the
movement of persons or things . . . among the several States or between any State and any place
outside thereof." *Kantor v. Air Atl. Med., P.C.*, 2021 WL 3888067, at *4 (E.D.N.Y. July 7,
2021) (citations and internal quotation marks omitted), *report and recommendation adopted*,
2021 WL 3884193 (E.D.N.Y. Aug. 31, 2021).  Defendant argues that Plaintiffs do not plead
individual coverage because the "janitorial services" Plaintiffs allege they performed are "by
[their] nature" local and thus do not satisfy the engagement-in-commerce requirement for
individual coverage.  Dkt. No. 23 at 11–12.  Plaintiffs have not responded to Defendant's
arguments that individual coverage is not properly pleaded.  Accordingly, the claim to individual
coverage is deemed abandoned. *See N.Y. State Ct. Clerks Ass'n v. Unified Ct. Sys. of the State
of N.Y.*, 25 F. Supp. 3d 459, 469 (S.D.N.Y. 2014) ("It is well settled in the Second Circuit [] 'that
a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute[s] an
abandonment of those claims.'" (quoting *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 143
(E.D.N.Y. 2014))); *Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally, but
perhaps not always, a partial response reflects a decision by a party's attorney to pursue some
claims or defenses and to abandon others.").

FLSA defines an "enterprise," *inter alia*, as "the related activities performed . . . by any person or persons for a common business purpose . . . [excluding] the related activities performed for such an enterprise by an independent contractor."  29 U.S.C. § 203(r)(1); *see also Jacobs*, 577 F.3d at 97.  An "enterprise" is "engaged in commerce" when it "(i) has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ."  29 U.S.C. § 203(s)(1)(A).  FLSA defines the term "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  *Id.* § 203(b).  "The word 'commerce' in this provision refers to 'interstate commerce.'"  *Vasquez v. NS Luxury Limousine Serv., Ltd.*, 2021 WL 1226567, at *9 (S.D.N.Y. Mar. 31, 2021) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 528 (S.D.N.Y. 1998) (Sotomayor, J.)).  "Enterprise coverage has been interpreted broadly by the courts."  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 355 (E.D.N.Y. 2015) (quoting *Boekemeier v. Fourth Universalist Soc'y in City of N.Y.*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000)); *Keawsri v. Ramen-Ya Inc.*, 2021 WL 3540671, at *5 (S.D.N.Y. Aug. 10, 2021).

Defendant argues that the AC fails to plead any of the three prongs to establish enterprise coverage: (1) that CEO has a "common business purpose"; (2) that its employees engage in commerce or the production of goods for commerce or work on goods or materials moved in commerce; or (3) that it has an annual gross volume of sales of not less than $500,000.  Dkt. No. 23 at 8.  The Court assesses each prong in turn.

### 1.   "Common Business Purpose"

Defendant argues first that the AC does not satisfy the "common business purpose" prong of FLSA.  It argues that Defendant is not covered by FLSA because its purpose and operations are "wholly charitable and rehabilitative."  Dkt. No. 23 at 9.  That argument is unavailing at this stage.

FLSA "contains no express or implied exception for commercial activities conducted by religious or other nonprofit organizations."  *Alamo Found.*, 471 U.S. at 296.  Moreover, "a rehabilitative motive does not preclude an employment relationship."  *Williams v. Strickland*, 87 F.3d 1064, 1069 (9th Cir. 1996).  At the same time, however, a 501(c)(3) organization "is not an enterprise merely because it receives income or charges a fee for services."  *Dobrosmylov v. DeSales Media Grp., Inc.*, 2021 WL 2779303, at *3 (E.D.N.Y. July 2, 2021) (internal citations and quotation marks omitted); *accord Walker v. The Interfaith Nutrition Network, Inc.*, 2015 WL 4276174, at *3 (E.D.N.Y. July 14, 2015).  A non-profit organization is covered by FLSA when it "serve[s] the general public in competition with ordinary commercial enterprises."  *Alamo Found.*, 471 U.S. at 299; *cf. Jacobs*, 577 F.3d at 97 ("Generally, non-profit organizations that do not 'engage in ordinary commercial activities,' or 'serve the general public in competition with ordinary commercial enterprises,' operate without a 'business purpose' and therefore are not enterprises." (internal citations omitted)); *Wood v. Mike Bloomberg 2020, Inc.*, 2025 WL 1002058, at *7–8 (S.D.N.Y. Mar. 31, 2025), *reconsideration denied,* 2025 WL 1696535 (S.D.N.Y. June 17, 2025); *see also Boekemeier*, 86 F. Supp. 2d at 287; *Meredith Perez v. Fed. Emergency Mgmt. Agency*, 2024 WL 4425823, at *14 (D.P.R. Sept. 30, 2024), *reconsideration denied*, 2024 WL 5245560 (D.P.R. Nov. 7, 2024).  "The characterization of [defendant's] businesses . . . is a factual question."  *Alamo Found.*, 471 U.S. at 299.

8

Defendant argues that Boston's allegations are insufficient to establish a "common business purpose" because Boston does not connect Participants' activities in performing jobs "to CEO's purpose and operations, which they acknowledge are wholly charitable and rehabilitative." Dkt. No. 23 at 9. However, a non-profit's stated charitable purpose is not determinative of whether its activities are performed for a "common business purpose." Indeed, the Supreme Court squarely rejected such an argument in *Alamo Foundation*. The Court noted that the Foundation's stated purposes, which included to "establish, conduct and maintain an Evangelistic Church; to conduct religious services, to minister to the sick and needy, to care for the fatherless and to rescue the fallen, and generally to do those things needful for the promotion of Christian faith, virtue, and charity," did not claim a "business purpose." 471 U.S. at 299. The Court nonetheless concluded that the Foundation could not escape FLSA coverage for its varied "commercial businesses, which include service stations, retail clothing and grocery outlets, hog farms, roofing and electrical construction companies, a recordkeeping company, a motel, and companies engaged in the production and distribution of candy," through which it employed people with addictions and criminal convictions as part of their rehabilitation. *Id.* at 292. It was not determinative, as petitioners there tried to argue, "that the various businesses they operate differ from 'ordinary' commercial businesses because they are infused with a religious purpose." *Id.* at 298.

The test for FLSA coverage did not turn on the organization's stated purpose for its commercial businesses, but rather on the effect of those businesses on the broader commercial environment. The Court ruled that the Foundation was subject to FLSA because it "serve[d] the general public in competition with ordinary commercial enterprises." *Id.* at 299. The Court also considered how that effect squared with the purpose of FLSA:

9

> [T]he payment of substandard wages would undoubtedly give petitioners and similar organizations an advantage over the competitors. It is exactly this kind of 'unfair method of competition' that the [FLSA] was intended to prevent, and the admixture of religious motivations does not alter a business's effect on commerce.

*Id.* So too here—CEO's charitable or rehabilitative motivations do not alter the effect of its activities on commerce. Boston need not demonstrate a connection between rehabilitative goals and the work Participants performed to allege that CEO operated with a "common business purpose."

Courts in this Circuit have adopted the Supreme Court's focus on "competition with ordinary commercial enterprises" in determining whether charitable or religious organizations act with a "common business purpose." *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d a77, 87 (E.D.N.Y. 2010). "[A] court must 'scrutinize[] the activities at issue . . .' and find whether the activities of the nonprofit compete with ordinary commercial enterprises to serve the general public, regardless of the 'admixture of religious [or charitable] motivations.'" *Id.* (quoting *Alamo Found.*, 471 U.S. at 298). In *Boekemeier v. Fourth Universalist Society in City of New York*, a court in this District found that a church's "employment of several individuals involved in an extensive advertising campaign to solicit interstate special event renters" to rent space in its buildings was "more than sufficient" to find it acted with a business purpose. 86 F. Supp. 2d at 285–86. It concluded that since the church's "rental activities are in direct competition with other short and long-term commercial landlords and special event locations, they are clearly commercial under the standard articulated by *Alamo* and its progeny." *Id.* at 286. In contrast, in *Locke v. St. Augustine's Episcopal Church*, the court also considered a church that rented its property, both for special events and to an insurance company, and found that the church did not act with a business purpose because it only rented its space for an average of ten or eleven events per year, did not advertise or market its buildings for events, and only

10

received four percent of its income from space rentals.  690 F. Supp. 2d at 88.  The court concluded that the church "does not perform rental activity as a 'business operation on the side,'" that the activity did not "compete[] with ordinary rental facilities to serve the general public," and, accordingly, that the plaintiff did not meet "the burden of establishing that [the church] performed any activities for a business purpose."  *Id.* at 88.

In *Archie v. Grand Central Partnership, Inc.*, then-District Judge Sotomayor assessed whether defendant-nonprofits that supplied jobs to formerly homeless individuals through a joint Pathways to Employment Program were covered by FLSA.  997 F. Supp. at 507.  The participants in the program performed clerical, administrative, maintenance, food service, security, and outreach work for less than minimum wage.  *Id.* at 507, 528.  The court determined that the defendant-nonprofits were "engaged in commerce" because their activities "serve the general public in competition with ordinary commercial enterprises, and that the payment of substandard wages gives them an unfair advantage in commercial activity."  *Id.* at 529.[5]  In accordance with the Supreme Court's analysis in *Alamo Foundation*, the court noted defendants' ability to offer "services to other private corporations at a significant discount" because they paid employees less than minimum wage (specifically, $1 an hour).  *Id.*; *see also id.* at 528 (noting that a defendant "regularly entered into contracts and solicited business from private corporations" to employ formerly homeless individuals).  Though operating as non-profits with a charitable purpose, the court found that "defendants entered the economic arena and competed against other organizations for economically beneficial contracts," and it therefore concluded that they were "an enterprise that engaged in commerce."  *Id.* at 529.

---

[5] Though the court analyzed whether defendants were in competition with ordinary commercial enterprises under the "engagement in commerce" prong, rather than the "common business purpose" prong, its analysis is still instructive here.

11

Boston has sufficiently alleged that Defendant competes with ordinary commercial enterprises and has a common business purpose. Boston alleges that Defendant employs thousands of Participants and places them in jobs across commercial industries, including janitorial services, landscaping, litter abatement, and maintenance. AC ¶ 34. Unlike the limited property rentals in *Locke*, these job placements are not an insignificant portion of the organization's work, but its central role: the AC characterizes Defendant as "an employment services organization." *Id.* ¶ 1. Boston further alleges that Defendant is able to secure favorable government contracts by "offering more favorable terms than would-be private contractors." *Id.* ¶¶ 34–35. In sum, Defendant "has entered the economic arena and competed against other organizations for economically beneficial contracts." *Archie*, 997 F. Supp. at 529.

Defendant's commercial activity goes to the heart of the Supreme Court's concern in *Alamo Foundation*: if a non-profit were permitted to pay "substandard wages" for ordinary commercial jobs, it would "undoubtedly" have "an advantage over their competitors," creating the "exact[] [] kind of 'unfair method of competition' that [FLSA] was intended to prevent." 471 U.S. at 299. Indeed, the industries that Participants perform work in are common subjects of FLSA lawsuits. *See, e.g.*, *McLaughlin v. Onanafe Mgmt. Sols. LLC*, 2024 WL 4184485, at *7–8 (E.D.N.Y. Sept. 14, 2024) (plaintiff who worked as a cleaner and porter established FLSA coverage); *Walden v. Sanitation Salvage Corp.*, 2015 WL 1433353, at *5 (S.D.N.Y. Mar. 30, 2015) (trash collector covered by FLSA to the extent he did not fall under the "motor carrier" exemption); *Alvarado v. J.A Vasquez Landscaping Co.*, 2023 WL 2542702, at *4 (E.D.N.Y. Feb. 14, 2023) (landscaping company is subject to FLSA); *Sanchez v. Clipper Realty, Inc.*, 2024 WL 3159821, at *8 (S.D.N.Y. June 25, 2024) (conditionally certifying FLSA class of "porters, handymen, concierges, and repairmen"). That an employment-services organization happens to

12

be organized as a non-profit with a charitable focus does not mean that its employees are stripped of federal labor protections available to other employees in the same industry.  Such an exception to the "common business purpose" inquiry would undermine FLSA's purpose to "protect all covered workers from substandard wages and oppressive working hours."  *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 402 (2d Cir. 2019) (quoting *Barrentine v. Ark. Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)).

### 2.    "Engagement in Commerce"

Defendant further argues that the AC should be dismissed because it does not plead facts to establish that Defendant had "employees engaged in commerce or in the production of goods for commerce, or . . . [that Defendant's] employees handl[ed], s[old], or otherwise work[ed] on goods or materials that have been moved in or produced for commerce by any person."  Dkt. No. 23 at 9–10.  It notes that Boston alleges only that he provided janitorial services for courthouses in New York State, "a purely local task."  *Id.* at 10.  Boston argues that the jobs at issue readily meet the "engagement in commerce" standard, as employees engaged in janitorial services, litter abatement, landscaping, and maintenance handle goods or materials that have moved in interstate commerce.  Dkt. No. 28 at 8.

FLSA covers an "enterprise engaged in commerce or in the production of goods for commerce."  28 U.S.C. § 203(s)(1).  For purposes of FLSA, "commerce" is defined as "trade, commerce, transportation, transmission, or communication among several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  As relevant here, "engaged in commerce" includes any enterprise that:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

13

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A).

The requirement that the enterprise be "engaged in commerce" is "rarely difficult to establish." *Jacobs*, 577 F.3d at 99 n.7.  "[L]ocal business activities fall within the reach of FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Archie*, 997 F. Supp. at 530.  The enterprise coverage requirement can be met "by showing that two or more employees have 'handl[ed] . . . materials that have been moved in . . . commerce,'" even without any demonstration that the enterprise sells its goods or services in interstate commerce.  *Jacobs*, 577 F.3d at 99 n.7 (quoting 29 U.S.C. § 203(s)(1)(A)(i)); *see also id.* (citing *Wirtz v. Melos Constr. Corp.*, 408 F.2d 626, 628 (2d Cir. 1969), for the proposition that "'handling' includes dealing in goods consumed locally in the employer's business," and *Archie*, 997 F. Supp. 504 at 530, to demonstrate "the ease with which the second step is satisfied under § 203(s), 'lead[ing] to the result that virtually every enterprise in the nation . . . is covered by the FLSA'").  Enterprise coverage "is not a high hurdle for Plaintiff to clear." *Soto v. Miss Laser Inc.*, 2023 WL 319547, at *4 (E.D.N.Y. Jan. 19, 2023).

To establish that workers handle goods or materials that have moved in interstate commerce, a plaintiff may specifically identify the goods that employees used in the course of their work.  *See, e.g.*, *Georges v. Detroit Pizza NYC LLC*, 2024 WL 1195727, at *4 (S.D.N.Y. Mar. 20, 2024) (finding engagement in interstate commerce where Plaintiffs alleged goods that employees worked with, including ingredients for restaurant dishes, soda, paper towels, and cleaning products); *Soto*, 2023 WL 319547, at *4 (Plaintiff identified goods she handled by alleging that "she performed 'deep cleanses with soaps, microdermabrasions with soaps, chemical skin peels, and microneedlings with dermarollers" (emphasis omitted)); *Maldonado*

14

*Juarez*, 2020 WL 6945944, at \*2 (plaintiff sufficiently alleged engagement in interstate commerce where he provided extensive lists of goods that he regularly handled while working). "Plaintiff does not need to specify the exact origin of the goods that Defendants' employees handled—she simply needs to provide sufficiently specific facts to allow the Court to infer that those goods originated outside of New York." *Soto*, 2023 WL 319547, at \*4; *Khan v. Nyrene, Inc.*, 2020 WL 1931282, at \*5 (E.D.N.Y. Mar. 11, 2020) (finding it reasonable "to assume that a [business] with over $500,000 in annual sales . . . does not rely exclusively on goods and equipment from New York State"), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020).

"Even where a plaintiff does not specify what types of goods the employe[e] of a defendant handled in interstate commerce, courts have found it reasonable to infer enterprise coverage from 'the nature of an employer's business.'" *Soto*, 2023 WL 319547, at \*5 (quoting *Cardoza v. Mango King Farmers Mkt. Corp.*, 2015 WL 5561033, at \*4 (E.D.N.Y. Sept. 1, 2015)). For instance, where a plaintiff was "employed as a 'nail technician and beautician' who 'was responsible for performing manicures and pedicures, hair removal procedures, and massages for customers,'" as well as "cleaning duties," the court "conclude[d] that 'it is logical to infer' from Plaintiff's allegations concerning the business that Defendants 'ha[ve] employees who handle goods or materials that have moved in interstate commerce.'" *Shu Lan Chen v. Gypsophila Nail & Spa Inc.*, 2015 WL 3473510, at \*4 (S.D.N.Y. June 2, 2015); *see also Lopez v. MNAF Pizzeria, Inc.*, 2021 WL 1164336, at \*5 (S.D.N.Y. Mar. 25, 2021) ("It is inconceivable that a restaurant with over $500,000 in annual sales did not use materials originating from out of state."); *Gao v. Kerry Nails Salon Corp.*, 2021 WL 673460, at \*3 (S.D.N.Y. Feb. 22, 2021) ("The Court concludes that the nail salon's employees handle and work with products—such as

15

nail polish and nail polish remover—that have traveled in interstate commerce."); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("[I]t is reasonable to infer that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State."); *Huerta v. Victoria Bakery*, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) (allegation that plaintiffs "were employed as bread makers in a Brooklyn-based bakery with over half a million dollars in annual sales" sufficient to allege engagement in interstate commerce, as "[i]t is inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York").

Boston alleges that Participants perform entry-level jobs such as "janitorial services, litter abatement, landscaping, and maintenance projects." AC ¶ 34. Defendant employs thousands of Participants to perform these jobs. *Id.* Boston alleges that they provided janitorial services for courthouses, and Defendant receives millions of dollars in government contracts for Participants to perform these services. *Id.* ¶ 35. While Defendant argues that such janitorial work is "purely local," Dkt. No. 23 at 10, courts in this Circuit have consistently found allegations that a business provides janitorial and cleaning services sufficient to allege engagement in commerce. *See, e.g.*, *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (allegations that plaintiffs were employees of a residential and commercial cleaning business sufficient for engagement in commerce because "in an FLSA context . . . it is logical to conclude that janitorial/cleaning supplies have moved in interstate commerce"); *Boekemeier*, 86 F. Supp. 2d at 285 ("Plaintiff's handling of janitorial goods that have moved in commerce is . . . more than sufficient to invoke enterprise coverage."); *Archie*, 997 F. Supp. at 530 (goods used by sanitation workers "undoubtedly moved in interstate commerce to New York City"). It is not difficult to

conclude that as part of an organization employing thousands of individuals to perform janitorial and maintenance services, employees handled goods that moved in interstate commerce.  Boston has fairly alleged "engagement in commerce."

### 3.    "Gross Volume of Sales"

An organization or business is an "enterprise" as defined by FLSA only if its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  29 U.S.C. § 203(r).

Defendant argues that, while the AC alleges that CEO "receives millions of dollars in government contracts," it fails to allege the time period over which it receives that revenue and thus has not pled that Defendant had an "annual gross volume of sales [of] not less than $500,000."  Dkt. No. 23 at 10–11.  Boston argues in opposition that "Government agencies pay CEO millions of dollars each year," as shown by the IRS form that CEO requests the Court take judicial notice of.  Dkt. No. 32 at 8.  CEO's counterargument is that contributions and grants are not revenue.  Dkt. No. 33 at 12.

At the pleading stage, a plaintiff can readily satisfy FLSA's gross-business requirement without providing specifics as to yearly revenue.  *See e.g.*, *Zokirzoda v. Acri Café Inc.*, 2020 WL 359908, at *2 (S.D.N.Y. Jan. 22, 2020) (allegation that Defendants "earned annual gross sales in excess of $500,000" sufficient to establish coverage); *Guan v. Lash Princess 56 Inc.*, 2023 WL 2242050, at *11 (S.D.N.Y. Feb. 27, 2023) (allegations regarding use of goods and equipment, "combined with Plaintiff pleading based on information and belief that Defendants realized more than $500,000 in gross sales per year, are sufficient to survive a motion to dismiss"); *Soto*, 2023 WL 319547, at *4 n.3 ("In order to meet the pleading requirement that Defendants are doing the requisite dollar volume of business to establish enterprise coverage under the FLSA, all that is required is [] a somewhat conclusory allegation that Defendants have an annual gross revenue in

excess of $500,000.00." (internal quotation marks and citation omitted)).  Yet, a plaintiff

generally must "plead the specific fact that the defendant did $500,000 or more in annual gross

business." *Duarte v. Falcon Gen. Const. Servs., Inc.*, 2014 WL 4906661, at *4 (E.D.N.Y. Sept.

11, 2014) (quoting *Gonzales v. Gan Isr. Pre-School*, 2014 WL 1011070, at *7 (E.D.N.Y. Mar.

14, 2014)); *id.* ("general assertion that defendants are employers under the FLSA is

insufficient"); *cf. Lam aka v. Russian Desserts Inc.*, 2020 WL 42810, at *2 (E.D.N.Y. Jan. 3,

2020) (finding enterprise coverage inadequately pled where "[p]laintiff has not specifically

pleaded this [$500,000 in annual business] requirement, nor has he alleged facts from which it

could be reasonably inferred").[6]

Here, although Boston pleads that Defendant "employs thousands of nonexempt workers

in New York State to perform various jobs such as janitorial services, litter abatement,

landscaping, and maintenance projects," AC ¶ 34, and "receives millions of dollars in

government contracts to have its Participants perform" janitorial work for courthouses, *id.* ¶ 35,

they do not plead, even on information and belief, that Defendant had over $500,000 in gross

sales.  That omission is not a minor defect.[7]  A factual allegation in a complaint signifies that

---

[6] Absent a specific pleading, a plaintiff may be able to satisfy the enterprise liability requirement by pleading sufficient facts that make it clear the defendant had $500,000 or more in annual gross sales. *See, e.g.*, *Ramirez v. Exclusive Mgmt. Sol. Grp. Inc.*, 2025 WL 3456654, at *4 (S.D.N.Y. Dec. 2, 2025) (finding that plaintiff sufficiently alleged gross-business requirement where 28 laundromats operated as one enterprise and the plaintiff alleged that each "laundromat had around 100 customers in a day and each customer would spend at least $10 or more"). There are no such allegations here.

[7] To cure this deficiency, Plaintiffs request that the Court take judicial notice of Defendant's 2023 IRS Form 990, public disclosure copy, which notes that CEO received over $100 million in "contributions and grants" in 2022 and 2023.  Dkt. No. 32 at 8.  Defendant also requests that the Court take judicial notice of this document, though for a different purpose.  Dkt. No. 23 at 4 n.1. Even though a Court may take judicial notice of matters of public record, those "records are received on the motion not for the truth of the assertions they contain, but instead and solely for the fact that the [records] were made and when they were made." *Bamba v. U.S. Dep't of Homeland Sec.*, 2021 WL 4478677, at *5 (S.D.N.Y. Sept. 30, 2021) (citing *Liberty Mut. Ins. Co.*

counsel has evidentiary support for it or, in the case of allegations on information and belief, at least a belief that the allegation will find reasonable support after the opportunity for discovery. Fed. R. Civ. P. 11(b)(3).  If Plaintiff here cannot at least make the allegation that Defendant had $500,000 or more in gross sales, then Defendant should not have to defend against this lawsuit. Accordingly, Defendant's motion to dismiss must be granted.  But the dismissal is without prejudice.  Because it appears apparent that Boston may be able to cure his pleading defect, the Court will permit Plaintiffs to amend to add the allegation that Defendant had at least $500,000 in gross revenue for each of the years as to which Boston seeks recovery.

### B. Sufficiency of the FLSA Allegations

Defendant argues that Boston does not allege that he worked more than forty hours in a workweek with sufficient particularity to allege a violation of FLSA's overtime requirements. Dkt. No. 23 at 12–15.[8]  Though the FLSA claim is dismissed for failure to allege gross volume of sales in excess of $500,000, the Court will evaluate Defendant's alternate argument regarding the sufficiency of the allegations of a FLSA violation for purposes of completeness.

The Second Circuit has held that "[i]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  In other words, "[t]o plead a plausible FLSA overtime claim, the plaintiff must provide sufficient detail about the length and frequency of his unpaid work to support a reasonable inference that he worked more than forty hours in a given week." *Butt v.*

---

*v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).  Plaintiffs ask the Court to take judicial notice of the form for the truth of the reported revenue.  The Court cannot do so.
[8] Defendant also argues that Plaintiff James Battle did not sufficiently allege overtime violations. As noted above, on January 6, 2026, Battle voluntarily dismissed all claims against Defendant and is no longer a plaintiff in this case.  Dkt. No. 40.

*HF Mgmt. Servs., LLC*, 2020 WL 207393, at *2 (E.D.N.Y. Jan. 14, 2020).  Although plaintiffs are not required to "plead their hours with mathematical precision," they must provide complaints with "sufficiently detailed factual allegations."  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013); *Romero v. Metro. Transp. Auth.*, 444 F. Supp. 3d 583, 587 (S.D.N.Y. 2020).  "Determining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023) (quoting *Lundy*, 711 F.3d at 114).  However, a plaintiff must allege more than "that at some undefined period in their employment they worked more than forty hours in a single week." *Id.* at 117; *see Collison v. WANDRD, LLC*, 737 F. Supp. 3d 231, 238–39 (S.D.N.Y. 2024); *Pappas v. City of New York*, 2024 WL 2093472, at *14 (S.D.N.Y. May 9, 2024).

 In *Herrera*, the Second Circuit held that a complaint adequately alleged a FLSA overtime violation where plaintiffs alleged that their "regularly scheduled work hours consisted of five shifts each week, and that each shift lasted between eight and three-quarters hours and nine hours." 84 F.4th at 115.  Plaintiffs bolstered their complaint by alleging that they "devoted an additional five hours per week to post-work duties, and an additional three hours per week to receiving shipments of merchandise." *Id.*  The court held that the *Lundy* pleading standard "is satisfied . . . if plaintiffs allege that their regularly scheduled workweek for a given period of time included more than forty hours of work, so that they were eligible for overtime during every week in which they worked their regular schedule." *Id.* at 117 (emphasis in original).  In *Collison*, applying *Herrera*, the court held that a "[p]laintiff need not identify the particular weeks in which he worked overtime hours where he alleges that he typically worked overtime hours and provides the number of overtime hours worked." *Collison*, 737 F. Supp. 3d at 239.

20

Plaintiff Boston has adequately alleged a violation of FLSA's overtime requirements. Boston alleges generally that he "and other non-exempt employees regularly worked over 40 hours a week for CEO." AC ¶ 37. He also alleges that he "worked from 6:00 am to 2:30 p.m. on each shift, and worked five scheduled shifts per week." *Id.* ¶ 37 n.2. Finally, Boston alleges that Participants were required to attend job coaching lasting one hour or more on their "would-be days off" and were paid "nothing for that time." *Id.* ¶¶ 3, 36. Putting those allegations together, Boston worked 42.5 scheduled hours a given week and then at least an additional hour for which he was not paid, giving rise to an overtime claim. *Cf. Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (affirming dismissal of FLSA complaint where plaintiff failed to show how the number of hours worked added up to forty or more in a given week).

The FLSA claim is dismissed without prejudice.

## II.    NYLL § 195(3)

Defendant additionally moves to dismiss Plaintiffs' claim under NYLL § 195(3) for lack of Article III standing. Defendant argues that Plaintiffs have failed to identify a concrete injury even if the statutory violation occurred.[9] Dkt. No. 23 at 17. The Court addresses that argument, as well as whether, even if Plaintiffs have Article III standing, the Court should decline to exercise jurisdiction.

---

[9] For the purposes of assessing standing, the Court need not evaluate whether Plaintiffs' alleged violations otherwise state a claim for relief. *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 567–77 (2d Cir. 2018) ("'Standing analysis does not permit consideration of the actual merits of a plaintiff's claim' . . . Plaintiffs have alleged concrete and particularized harms for all of their claims, and for the purposes of Article III, they have therefore alleged sufficient facts to establish the elements of standing." (quoting *Graham v. Catamaran Health Sols. LLC*, 2017 WL 3613328, at *4 (8th Cir. Aug. 23, 2017))).

Section 195(3) of the NYLL requires an employer to "furnish each employee with a wage statement with every payment of wages," listing several details, including the employer's name, address, and telephone number, any allowances taken, deductions, gross wages, net wages, and, for nonexempt workers, the employee's hourly rate or rates of pay and the correct number of regular and overtime hours the employee worked.  NYLL § 195(3); *accord Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 511 (S.D.N.Y. 2025).  "The wage notice requirements are intended to assist employees seeking to vindicate their rights and ensure they receive accurate and lawful pay." *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 506 (S.D.N.Y. 2024) (citing N.Y. Spons. Memo., 2010 S.B. 8380).

The Second Circuit held in *Guthrie v. Rainbow Fencing, Inc.* that plaintiffs pursuing NYLL claims for failure to provide wage notices and wage statements cannot predicate standing purely on the fact that Section 195 "grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  113 F.4th 300, 305 (2d Cir. 2024) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021)).  "[A] plaintiff must show some causal connection between the lack of accurate notices and [a] downstream harm," such as the plaintiff's impaired ability to seek relief for violations about which she may not have information or a lack of proper documentation to apply for public benefits.  *Id.* at 308–09.  In other words, a plaintiff cannot invoke the Court's Article III jurisdiction by pointing only to "technical violations of the [NYLL]."  *Id.* at 305.  The court was careful to note that district courts should not "impose[ ] too high a burden on plaintiffs-employees in § 195 cases," and that a plaintiff "who has plausibly shown that defective notices led him or her to lose wages" has done enough.  *Id.* at 310.  "A plaintiff need not . . . establish an injury that is greater than or different from the loss of wages or

22

overtime pay alleged in their lawsuit." *Lock v. Costco Wholesale Corp.*, 2024 WL 4728594, at

*4 (E.D.N.Y. Nov. 8, 2024) (citing *Guthrie*, 113 F.4th at 308).

Following *Guthrie*, courts in this Circuit "are in agreement that a plaintiff has standing if

he [or she] plausibly alleges that, by failing to provide the required wage statements, the

employer was 'able to hide [its] violations of wage and hour laws' and thus prevent the employee

from 'determining and seeking payment for the precise amount of [his] unpaid wages.'" *Roma v.*

*David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (quoting *Freeland v.*

*Findlay's Tall Timbers Distrib. Ctr., LLC*, 2024 WL 4652251, at *2 (W.D.N.Y. Nov. 1, 2024)));

*see also Cortez v. Brand Name 99 Cents & Up Corp.*, 2025 WL 1251297, at *5–6 (S.D.N.Y.

Apr. 30, 2025); *Mangahas*, 754 F. Supp. 3d at 507.

Plaintiffs allege that Defendant failed to provide accurate wage statements as required by

Section 195 because the paystubs that Defendants provided did not include the hours that

Plaintiffs "spent attending 'job coaching' sessions in its wage statements and did not include

'call in' hours required by 12 N.Y.C.R.R. §§ 142-3.3." AC ¶ 62.  Plaintiffs allege that as a

result, they "were unaware of the number of compensable hours they were working each week"

and prevented "from being able to calculate or advocate for their proper pay." *Id.* ¶ 62.

Plaintiffs further allege that if Defendant had included this information, Plaintiffs would have

advocated for their proper pay. *Id.* ¶ 63.  In essence, Plaintiffs argue that because of the wage

statement deficiencies, they did not know that they were supposed to receive payment for job

coaching sessions or "call in" hours, and, as a result, could not advocate, but otherwise would

have advocated, for proper pay for these additional hours of work.  These allegations are

sufficient to establish Article III standing. *See Santamaria v. Vee Techs., Inc.*, 2024 WL

1216579, at *8 (S.D.N.Y. Mar. 21, 2024) ("[T]he informational harm—the fact that she wasn't

advised that she was due overtime if she worked overtime hours—led to concrete injury here. That is, Santamaria didn't know she was supposed to be paid overtime, and so she lost out on the ability to advocate for it and be paid according to the law's requirements."); *Cortez*, 2025 WL 1251297, at *6 (allegation that Section 195 violation prevented plaintiff "from 'accurately calculat[ing] his rightful wages' and from 'fully understand[ing] and assert[ing] his rights regarding his wages" and that absent the violation, he "could have afforded" certain improved necessities, was sufficient to plead standing).

Defendant argues that even if Plaintiffs have standing to bring a claim under NYLL Section 195, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. Under 28 U.S.C. § 1367(c), a federal court "may decline to exercise supplemental jurisdiction over a [supplemental state-law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). If "a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction" over the remaining related state-law claims if they derive from the same common nucleus of operative fact. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). As a general matter, "[w]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case

24

without prejudice." *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) (footnote omitted)).

Given the dismissal of Plaintiffs' only claim that arises under federal law, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  *See Shi Ming Chen v. Hunan Manor Enter., Inc.*, 2018 WL 1166626, at *9 n.4 (S.D.N.Y. Feb. 15, 2018) ("Having dismissed the only claims against Moving Defendants over which it has original jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state and common law claims at this early stage in the litigation").  Plaintiffs may, however, file a second amended complaint to replead their federal claim and, if they do so, may also replead their state law claims.

## CONCLUSION

Defendant's motion to dismiss Plaintiffs' Amended Complaint is GRANTED, and this case is dismissed without prejudice to refiling a federal claim that states a claim for relief. Plaintiffs are granted leave to file a second amended complaint, consistent with this Opinion and Order, by April 10, 2026.  By that date, Plaintiffs shall also show cause why Plaintiff Cantey, who has not stated a claim under FLSA or any federal statute, should not be dismissed from this case for lack of subject matter jurisdiction over his claims.

The Clerk of Court is respectfully directed to close Dkt. No. 22.

SO ORDERED.

Dated: April 6, 2026
 New York, New York

_____
 LEWIS J. LIMAN
 United States District Judge

25